UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| NORTHSTAR BUNKER N.V. | § § § | |
| Plaintiff | § § | CIVIL ACTION NO. |
| vs. | § § § | _____ |
| PRAXIS ENERGY AGENTS, L.L.C. | § § § § | Rule 9(h) Admiralty |
| Defendant | § § | |

**PLAINTIFF'S ORIGINAL COMPLAINT**

TO THE HONORABLE JUDGE OF SAID COURT:

Pursuant to 28 U.S.C. §1333, plaintiff Northstar Bunker N.V. submits its Original Complaint against Praxis Energy Agents, L.L.C. for breach of a contract to supply marine fuel oil. In support of its Complaint, Northstar shows as follows:

**PARTIES**

1. Plaintiff Northstar Bunker N.V. is a Belgium public limited company, with its principal place of business in Antwerp, Belgium.

2. Defendant Praxis Energy Agents, LLC is a Texas limited liability company with its principal place of business in The Woodlands, Texas. It may be served with process through its registered agent, Theodosios Kyriazis, 1725 Hughes Landing Blvd., Suite 890, The Woodlands, Texas 77380.

**JURISDICTION AND VENUE**

3. This Court has jurisdiction pursuant to 28 U.S.C. §1333. This is an admiralty or maritime claim brought within the meaning of Rule 9(h) of the Federal Rules of Civil

Procedure and Supplemental Rules for Admiralty or Maritime Claims. Specifically, Northstar and Praxis entered into an agreement whereby Northstar would sell two varieties of marine fuel oil, otherwise known as "bunkers," to Praxis. The sale was formalized through a Sales Confirmation sent from Northstar to Praxis. The Sales Confirmation explicitly incorporated Northstar's Terms & Conditions, which could be found online at Northstar's webpage. The Sales Confirmation incorporating the Terms and Conditions is a maritime contract giving rise to the Court's admiralty jurisdiction. Alternatively, this Court has jurisdiction over this dispute pursuant to 28 U.S.C. § 1332(a) because complete diversity exists between Northstar and Praxis and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

4. Venue is proper in the Houston Division of this District because Praxis is subject to personal jurisdiction in this District and Division.

**FACTS**

5. Northstar is a seller of different varieties and grades of marine fuel oil to vessels located in The Netherlands and Belgium.

6. On information and belief Praxis is a trader, broker, and purchaser of marine fuel oil. Praxis has offices in Houston/The Woodlands, Dubai, Singapore, and Greece.

` 7. On December 10, 2019, Praxis (from its office in Houston) sent Bunker Nomination contract no. 23211 to Northstar for the purchase of two different grades of bunkers, to be placed on the vessel M/V ANTIMILOS.[1] This Bunker Nomination states in all-capital letters that it is to be subject to "Supplier's Standard Terms and Conditions."

---

[1] The December 10, 2019 Bunker Nomination is attached as Exhibit 1.

8.     Also on December 10, 2019, Northstar sent a Sales Confirmation to Praxis's Dubai office, which confirmed the sale of the bunkers requested by Praxis in the Bunker Nomination.[2] The Sales Confirmation listed the grades/quality and quantities of the bunkers being purchased, the purchase prices, the payment currency, and the bunkers supplier. The Sales Confirmation stated that payment for the bunkers was due within forty-five (45) days of presentation of an invoice. The Sales Confirmation also provides in a section entitled "Terms":

> This sale and delivery of the marine fuels described above is subjected to the Supplier's general terms of sale for marine fuels. The acceptance of the marine fuels by the vessel named aboved [sic] shall be deemed to constitute acceptance of the said general terms applicable to you as 'Buyer' and to Northstar as 'Seller'. The said terms and conditions are welknown [sic] to you and remains in your possession. If this is not the case it is your obligation to contact us in writing [sic] to request another copy of same.
> https://northstarbunker.com/contact/terms-conditions

9.     Northstar's general terms of sale are hyper-linked to the Sales Confirmation – one can click on the link in the Sales Confirmation document and will be taken directly to the Terms and Conditions on Northstar's website. These Terms and Conditions can also be found on Northstar's website (northstarbunker.com) under the topic heading "Contact"; the terms are the only choice to click under the Contact heading.[3]

10.    Per the terms of the Sales Confirmation, the subject bunkers were delivered to Praxis onboard the M/V ANTIMILOS while the vessel was in Rotterdam, The Netherlands on December 23, 2019.

11.    Northstar sent to Praxis Invoice No. 19120413 that detailed the quantity, quality, and final cost for the bunkers.[4] One grade of bunkers (DMA) was invoiced for

---

[2] The 12.10.19 Sales Confirmation is attached as Exhibit 2.
[3] Northstar's Terms and Conditions are attached as Exhibit 3.
[4] Invoice No. 19120413 is attached as Exhibit 4.

$150,248.49 for the quantity placed onboard. The other ordered grade (VLSFO) was invoiced for $538,060.15 for the quantity placed onboard. The invoice total of $688,308.64 was listed as due in full on February 6, 2020.

12. Praxis paid Northstar $150,248.49 for the DMA bunkers on February 21, 2020.[5]

13. The $538,060.15 representing the cost of the VLSFO bunkers remains unpaid and overdue. Northstar, by email demand from its counsel to Praxis, has attempted to obtain payment from Praxis, but such demand has not resulted in payment of the overdue amount from February 13, 2020 to the time of this filing.

14. Prior to the contract at issue in this dispute, Northstar and Praxis had conducted numerous similar transactions that were subject to and bound by Northstar's Terms and Conditions.

## NORTHSTAR'S TERMS AND CONDITIONS

15. Northstar's general terms and conditions control the sale of the bunkers to Praxis. The relevant sections of the Terms and Conditions are as follows:

Terms and Conditions of sale for Marine Bunkers - Edition 2010

A. GENERAL INTRODUCTION
A.1 This is a statement of the terms and conditions according to which the international Transcor Energy SA (hereinafter called "NORTHSTAR NV") will sell marine bunkers.
A.2 These conditions apply to all offers, quotations, orders, agreements, services and all subsequent contracts of whatever nature, except where otherwise is expressly agreed in writing by NORTHSTAR NV.

\*\*\*

C. OFFERS, QUOTATIONS AND PRICES
C.1 An Agreement shall only be binding on the Seller upon written confirmation from the Seller thereof.

---

[5] 2.21.20 Payment information is attached as Exhibit 5.

C.2 Agreements entered into by brokers or any other representative on behalf of the Seller shall only bind the Seller upon written confirmation from the Seller.

C.3 The Seller's offer is based on the applicable taxes, duties, costs, charges and price level of components for Bunkers existing at the time of the conclusion of the agreement (the time of Seller's confirmation). Any later or additional tax, assessment, duty or other charge of whatever nature and however named, or any increase of components for Bunkers or any additional costs borne by the Seller whatsoever caused by any change in the Seller's contemplated source of supply or otherwise, coming into existence after the agreement has been concluded, shall be added to the agreed purchase price, provided that the Seller shall give the Buyer prior notice of this effect within a reasonable time after the Seller becoming aware of the relevant circumstances.

\*\*\*

D. SPECIFICATIONS (QUALITY - QUANTITY)

D.1 The Buyer shall have the sole responsibility for the nomination of the quality and the quantity of the Bunkers, which shall correspond to the written confirmation from the Seller.

D.2 The quality and quantity shall be as agreed between the Seller and the Buyer and correspond to the Seller's written confirmation.

D.3 Where standard specifications are being given or referred to, tolerances of 5% in quality are to be accepted without compensation or other consequences whatsoever.

\*\*\*

I. PAYMENT

I.1 Payment shall be made by the Buyer as directed by the Seller within the period agreed in writing.

I.2 Payment shall be made in full, without set-off, counterclaim, deduction and/or discount free of bank charges to the bank account indicated by the Seller on the respective invoice(s).

I.3 Notwithstanding any agreement to the contrary, payment will be due immediately in case of bankruptcy, liquidation or suspension of payment or comparable situation of the Buyer, or arrest or assets and/or claims of the Buyer, or in case of any other situation, which in the sole discretion of the Seller, is deemed to adversely affect the financial position of the Buyer.

I.4 Payment shall be deemed to have been made on the date of which the Seller has received the full payment and such is available to the Seller. If payment falls due on a non-business day, the payment shall be made on or before the business day nearest to the due date. If the preceding and the succeeding business days are equally near to the due date, then payment shall be made on or before the preceding business day.

I.5 Any delay in payment shall entitle the Seller to interest at, presently, the rate of 2 (two) per cent per month or any part thereof without prejudice to any rights or remedies available to the Seller, and furthermore the Seller is entitled to charging administrational penalty fee of USD 1.00 per mton supplied, or the equality thereof in local currency, thus minimum penalty fee of USD 250.00.

I.6 Payments made by the Buyer shall at all times be credited in the following order: (1) costs, (2) interest and administrational fee, and (3) invoices in their order of age, also if not yet due.

I.7 All costs borne by the Seller in connection with the collection of overdue payments, whether made in or out of court and in general all costs in connection with breach of this agreement by the Buyer, shall be for the sole account of the Buyer.

I.8 The Seller shall at all times be entitled to require the Buyer to grant the Seller what the Seller deems to be proper security for the performance of all its obligations under the agreement. Failing immediate to provide such security upon request, the Seller shall be entitled to stop any further execution of any agreement(s) between the parties until such time as the Buyer has provided the required security.

J. CLAIMS

J.1 Any claim in regard to the quantity delivered must be notified by the Buyer or the Master of the Vessel to the Seller or its representative immediately after completion of delivery in the form of a statement of a letter of protest. If the Buyer fails to present such immediate notice of protest to the Seller such claim shall be deemed to have been waived and shall be barred for any later time.

J.2 Claims concerning the quality of the bunkers delivered shall be submitted to the Seller in writing within 15 (fifteen) days after delivery, failing which the rights to complain or claim compensation of whatever nature shall be deemed to have been waived and barred for all times.

J.3 The Buyer shall be obliged to make payment in full and fulfil all other obligations in accordance with the terms hereof, whether or not they have any claims or complaints.

K. LIABILITY

K.3 The Buyer shall be liable towards the Seller and herewith undertakes to indemnify the Seller for any and all damages and/or costs suffered or otherwise incurred on the Seller due to a breach of contract and/or fault or neglect of the Buyers, its agents, Servants, (sub)contractors, representatives, employees and the officers, crews and/or other people whether or not onboard of the respective vessel(s). The Buyer furthermore undertakes to hold the Seller harmless in case of any third party institutes a claim of whatever kind against the Seller with direct or indirect relation to any agreement regulated by these terms and conditions. Third party shall mean any other (physical or legal) person/company than the Buyer.

\*\*\*

M. BREACH/CANCELLATION

M.1 The Seller shall have the option to immediately cancel the agreement in full or in part, or to store or produce the storage of the Bunkers in whole or in part for the account and risk of the Buyer and to charge the Buyer the expenses thereby incurred, or to hold the Buyer fully to the agreement, or take any other measures which the Seller deems appropriate, without prejudice to its rights of indemnification, without any liability on the side of the Seller, in any (but not limited to) one of the following cases:

a) when the Buyer, for whatever reason, fails to accept the Bunkers in part or in full at the place and time designated for delivery;

b) when the Buyer fails in part or in full to comply with its obligations to pay any amount due to the Seller and/or provide security as set out herein;

c) when, before the date of delivery, it is appearant [sic] in the opinion of the Seller that the financial position of the Buyer entails a risk for the Seller;
d) when, in case of force majeure, the Seller is of the opinion that the execution of the agreement shall be cancelled.

\*\*\*

P. LAW AND JURISDICTION
P.1 This agreement shall be governed and construed in accordance with the laws of Belgium, save as provided in Clause P.2 below.
P.2 All disputes arising in connection with this agreement or any agreement relating hereto, save where the Seller decides otherwise in its sole discretion, shall be finally settled in accordance of Belgian law.
P.3 For the sole benefit of the Seller it is further agreed that the Seller without prejudice to any rights hereunder of the Seller or any claim raised pursuant to Clause P.2 above have the right to proceed against the Buyer, any third party or the Vessel in such jurisdiction as the Seller in its sole discretion sees fit inter alia for the purpose of securing payment of any amount due to the Seller from the Buyer or the Owner (pursuant to a payment guarantee). In such circum-stances the proceedings shall be governed by the law (substantive and procedural) of such jurisdiction.

Q. VALIDITY
Q.1 These terms and conditions shall be valid and binding for all offers, quotations, prices and deliveries made by Transcor Energy SA as of January 1st, 2010, or at any later date.
Q.2 These terms and conditions are available at the website www.transcor.be, on which site aswell [sic] the Sellers may notify amendments, alterations, changes or verifications to same. Such amendments, alterations, changes or verifications are deemed to be a part of the entire terms once same have been advised on the website.

**BREACH OF CONTRACT**

16.     Praxis has failed to pay for the VLSFO bunkers it purchased from Northstar, in breach of Section I of the Terms and Conditions.

17.     The Sales Confirmation that incorporates Northstar's Terms and Conditions is a valid contract between Northstar and Praxis. Northstar has performed all of its obligations under the contract by delivering VLSFO bunker fuel at the time, place, quantity, and quality specified by Praxis. Under Section M of the Terms and Conditions, Praxis has breached the agreement by not providing payment for the VLSFO bunkers. Northstar has been damaged

by this breach in the amount of $538,060.15 owed for the bunkers and an as of yet unspecified amount spent in pursuit of this payment, including attorneys' fees and costs.

## INTEREST OWED AND ATTORNEYS' FEES UNDER THE CONTRACT

18.     Section I.5 of the Terms and Condition states that Praxis owes 2% interest per month of late payment. This interest is currently owed and ongoing.

19.     Section I.7 of the Terms and Conditions states that Praxis owes all costs incurred by Northstar in obtaining overdue payments or due to Praxis's breach of contract, whether in court or out of court.

## RELIEF REQUESTED AND PRAYER

20.     All conditions precedent to the filing of this suit have occurred or been met.

21.     Northstar is seeking $538,060.15 in overdue payments for the VLSFO bunkers it sold and delivered to Praxis. Northstar is also seeking interest on that amount at 2% per month from the date such payment was due to present. Finally, Northstar is seeking its attorneys' fees and costs incurred in bringing this breach of contract suit to collect these payments.

WHEREFORE, PREMISES CONSIDERED, plaintiff Northstar Bunker N.V. prays that, after due proceedings are had, this Honorable Court find that defendant Praxis Energy Agents, LLC breached its contract with Northstar, that Praxis owes the amounts requested to satisfy the contract, that Praxis owes interest on past due payments, and that Praxis owes attorneys' fees and costs in obtaining this award. Plaintiff finally prays for such other and further relief, both general and special, at law or in equity, or in admiralty to which it may be justly entitled.

Respectfully submitted,

/s/ *Michael A. Orlando*
Michael A. Orlando – Attorney in Charge
Texas Bar No. 15302700
Fed. ID. No. 1814
MEYER ORLANDO LLC
13201 Northwest Freeway, Suite 119
Houston, Texas 77040
Telephone (713) 460-9800
Facsimile (713) 460-9801
morlando@meyerorlando.com
**ATTORNEYS FOR PLAINTIFF NORTHSTAR BUNKER N.V.**

OF COUNSEL:

MEYER ORLANDO LLC
Mike A. Orlando, Jr.
Texas Bar No. 24070367
Fed. ID. No. 1051267